**FILED**

JAN 26 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  CARL A. WESCOTT
   8210 E. Via de la Escuela
2  Scottsdale, AZ 85258
   *in propria persona*
3  +1 276 773 7377

# UNITED STATES DISTRICT COURT

## DISTRICT OF CALIFORNIA, NORTHERN

CARL A. WESCOTT,

                    Plaintiff,

vs.

GOOGLE, LLC;

                    Defendants.

+ DOES 1 through 10

Civil Action No. **C 24 00497 VKD**

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE, DECLARATORY RELIEF, and INJUNCTIVE RELIEF**

Plaintiff Carl A. Wescott, proceeding *pro se,* using the assigned legal claims of Capital Ideas, WLL (Exhibit C), complains of Defendant Google, LLC, and in support of his complaint, the Plaintiff states as follows.

## The Parties: Plaintiff and Defendant

1. Carl Wescott is an individual presently residing in Scottsdale, Arizona.

2. Google, LLC is a limited liability company organized and existing under the laws of the State of Delaware and is headquartered in Mountain View, California. Google is owned by Alphabet Inc., a publicly traded company incorporated and existing under the laws of the State of Delaware and headquartered in Mountain View, California. Alphabet revenue for the twelve

months ending September 30, 2023 was $297.132 Billion.  Google engages in, and its activities substantially affect, interstate trade and commerce. Google provides a range of products and services that are marketed, distributed, and offered to consumers throughout the United States, across state lines, and internationally.  One of those products is Gmail, a free consumer webmail and app product for consumers that is then upsold to Google Workspace and GSuite enterprise products.

3. Capital Ideas, WLL ("Capital Ideas") is the Plaintiff's limited liability entity, the party that is in contract with Epix Minerals (Exhibit B) and many other clients to raise equity or debt capital for them.  The Plaintiff and Capital Ideas are in the business of making investor introductions that result in closed investment deals.

4. To differentiate between Carl Wescott, the Plaintiff with the assigned legal claims of legal person Capital Ideas, and Carl Wescott, the individual, "Carl Wescott" shall refer to the natural person Carl Wescott.

5. Collectively, the Plaintiff and Google, LLC ("Google") are "the Parties."

**Allegations regarding conspiracy between defendants**

6. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, individuals as yet unknown to the Plaintiff, in addition to acting for himself and herself and on their own behalf individually, as well as for the benefit of their marital community (if any), is and was acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency,

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

service, employment, representation, and conspiracy.

7. Plaintiff further alleges on information and belief that the acts of each of those individual Defendants were fully ratified by each and all of the other Defendants.

8. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific individual Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

9. In addition, upon information and belief, there are other corporate, trust, and other entity type Defendants involved in these conspiracies, currently unknown to Plaintiff.   They, too, shall emerge with the benefit of legal discovery.

10. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, all such corporate entities, in addition to acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

11. Plaintiff further alleges on information and belief that the acts of each of the entity Defendants, too, were fully ratified by each and all the Defendants.  Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific entity Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

## Jurisdiction and Venue

12. Defendant Google is domiciled in this district.  Thus, this Court is the appropriate venue for adjudication of the parties' issues.

13. This is an action for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for damages greater than US $75,000.  Alleged damages are explained in further detail below as they are critical to this Court establishing subject-matter jurisdiction.

14. Supplemental jurisdiction over the Plaintiff's California state law claims is pursuant to 28 U.S.C. § 1367 and the fact that the defendant is domiciled in this district.

## Subject-Matter Jurisdiction – Background and Legal Standards

15. With damages of $75,000 and the diversity of citizenship of Plaintiff and Defendants, the Plaintiff would qualify for United States District Court under 28 U.S. Code § 1332(a)(1):

> DIVERSITY OF CITIZENSHIP; AMOUNT IN CONTROVERSY; COSTS
>
> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
>> (1) citizens of different States;   *(28 U.S. Code § 1332 (a)(1))*

16. The Plaintiff resides in Arizona and the Defendant is a citizen of California.

17. Thus, the parties have complete diversity of citizenship.

18. The Plaintiff will add the facts, logic, and reasoning supporting the Plaintiff's thinking that his recoverable damages will be greater than US $75,000.

19. To qualify for federal court under complete diversity of citizenship, the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs (*28 U.S.C. § 1332(a)*

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE
also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

1  *(2014))*.

2  20. The determination of the amount in controversy for federal subject matter jurisdiction is an

3     issue decided under federal law. 14AA FEDERAL PRACTICE AND PROCEDURE § 3702

4     (4th ed. 2014) [hereinafter "FEDERAL PRACTICE"]. See *Horton v. Liberty Mut. Ins. Co.*, 367

5  U.S. 348, 352 (1961).

6

7  21. Federal courts will, however, look to applicable state law to determine the nature of the

8     plaintiff's substantive claim and related damages. FEDERAL PRACTICE § 3702. See *Horton*,

9     367 U.S. at 352-353.

10 22. Numerous courts, including the United States Supreme Court have held that the amount in

11    controversy for jurisdictional purposes is measured by the direct pecuniary value of the right

12    that the plaintiff seeks to enforce or the value of the object that is the subject matter of the suit.

13    FEDERAL PRACTICE § 3702.5. See *Hunt v. Washington State Apple Advertising Com'n*, 432

14    U.S. 333, 97 S.Ct. 2434, 53 L. Ed. 1067 (1947).

15

16 23. The direct pecuniary value of the right is simply an estimate of the total amount in dispute rather

17    than an assessment of liability. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th

18    Cir. 2010).

19 24. The amount in controversy is determined without considering accrued or accruing interest or the

20    costs associated with the lawsuit. *(28 U.S.C. § 1332(b))*

21

22 25. Courts have held that collateral effects will not be taken into account when calculating the

23    amount in controversy. FEDERAL PRACTICE § 3702.5. See *Healy v. Ratta*, 292 U.S. 263,

24    267 (1934) ("the collateral effects of the decree, by virtue of stare decisis, upon other and

25    distinct controversies, may not be considered in ascertaining whether the jurisdictional amount

26

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

is involved, even though their decision turns on the same question of law."). See also *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.").

26. The amount in controversy may include compensatory damages including general and special damages such as pain and suffering and out of pocket loss. The amount in controversy may also include punitive damages. *Anthony v. Security Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankinship*, 20 F.3d 383, 386-387 (10th Cir. 1994).

27. When there is direct legal authority, by statute or contract, for the recovery of attorneys' fees, then the fee claim may be included in determining the amount in controversy regardless of whether the award of fees is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 155-1156 (9th Cir. 1998).

**Subject-Matter Jurisdiction with the Alleged Facts of this Particular Case**

28. The Plaintiff plans to get an attorney for this case in the future, if necessary.

29. The Plaintiff may already have lost $260,000 ($350,000 Canadian) in one deal alone with Epix Minerals, if Epix Minerals closes its investment round soon with other investors.

30. Then that happens, the Plaintiff will have been permanently deprived of that opportunity and the resulting revenues.

31. The Plaintiff fully acknowledges that the impact of the lost Gmail accounts, that Google has yet

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE
also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

to help restore to Carl Wescott, their rightful owner, may only be a delay rather than a permanent deprivation.

32. However, the Plaintiff can point to at least ten (10) more such deals, in some cases where the Plaintiff has now permanently deprived of revenues he would or might otherwise have earned.

33. The Plaintiff alleges that he has over $200,000 of base damages and that that number is extremely conservative.

34. $200,000 far exceeds the threshold ($75,000) for federal subject-matter jurisdiction.


**Underlying Facts & Background Context – Block Criminal Gang Hijacks Plaintiff Gmails**

35. Carl Wescott, like many consumers, uses Google's Gmail product, for his personal and business communications.

36. Carl Wescott is also and has also been a customer of Google with AdWords, Workspace, GSuite, Google Fi, and other many Google products he and his companies have paid for.

37. Beginning in 2019, strange things began happening with the Plaintiff's cell phones and emails. For example, some emails that he knew he had received were deleted, without the Plaintiff deleting them.

38. Beginning in 2019, the Plaintiff began losing emails, including gmail accounts, that were "hijacked."

39. By "hijacked", the Plaintiff means that someone else took over the account and changed the password, with the Plaintiff no longer able to access his email account.

40. Google provides an account recovery process, which the Plaintiff has used to recover some of the hijacked email accounts in the past.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE
also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

41. It has taken some time for the Plaintiff to figure out what has been happening to him.

42. The Plaintiff now knows the identity of some of the people who have been hijacking his email accounts, his laptops, and other accounts.

43. The Plaintiff also knows their *modus operandi*, including how they have been stealing and hijacking his email accounts and his laptops via their administrator accounts.

44. Mr. Robert J. Block ("Block") is the main person who has been doing this, with many people in his criminal gang involved ("the Bob Block Criminal Gang", or the "Block Criminal Gang").

45. Mr. Block stole the Plaintiff's birth certificate, stole the Plaintiff's passports, stole his passport cards, and stole his identity.

46. Mr. Block uses the Plaintiff's stolen identity for significant further crime.

47. Mr. Block is a former Illinois attorney who became disbarred in 1997.

48. Mr. Block ultimately became homeless after disbarment when he could not pay his bills and then turned to a life of crime.

49. Mr. Block has many other victims, but the Plaintiff is one of his main victims.

50. Mr. Block has stolen cell phones, laptops and more from the Plaintiff many times.

51. Mr. Block is, unfortunately, also the Plaintiff's stalker, who follows the Plaintiff around, harassing the Plaintiff and stealing from him.

52. The Plaintiff has filed Restraining Orders against Mr. Block in California and Arizona.

53. The Plaintiff has also filed many police reports about Mr. Block and the Bob Block Criminal Gang.

54. Unfortunately, Mr. Block and his criminal gang members are not yet locked up.

55. Mr. Block and the Bob Block Criminal Gang are still a danger to the Plaintiff and to society at

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

1   large.

2   56. While there are other ways that Mr. Block has taken over the Plaintiff's accounts, the primary

3       way has been to switch the Plaintiff's cell phone service to Mr. Block's cell phone.

4   57. Most people set up recovery accounts for their emails and our laptops and more.

5   58. Carl Wescott was also in the habit of setting up a recovery phone – his cell phone – for his

6       emails and his laptop administrator accounts.

7

8   59. When Mr. Block temporarily controls the Plaintiff's cell phone service (by switching service to

9       Mr. Block's cell phone), Mr. Block can and does use the Plaintiff's cell service to call and

10      message people pretending to be the Plaintiff.  (Mr. Block commits many felonies every time he

11      does this)

12  60. More germane to the subject at hand, while using the Plaintiff's cell phone service with his cell

13      phone, Mr. Block has then been able to take over the Plaintiff's emails on hundreds of

14
        occasions, and his laptop administrator accounts on dozens of occasions.
15

16  61. Mr. Block simply uses the email phone recovery option to "recover" (in Mr. Block's case, it's a

17      theft, not a recovery) of the email address or the laptop administrator account.

18  62. Now that Carl Wescott knows how Mr. Block and the Bob Block Criminal Gang takes over his

19      cell phone service and hijacks his email accounts and laptops, Carl Wescott no longer uses

20
        recovery accounts.
21

22  63. Unfortunately, between 2000 and 2023, the Plaintiff lost at least fifty (50) email accounts to Mr.

23      Block and members of his criminal gang.

24  64. Most of them are gmail accounts, twenty-six (26) of which are listed in Exhibit A.

25  65. One of those stolen accounts (CarlWescott2021@gmail.com) was also used to administer the

26

9

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

1    Plaintiff's Google Fi account.

2    66. Once Mr. Block and his criminal gang had hijacked CarlWescott2021@gmail.com, Block

3       Criminal Gang members then could control and administer the Plaintiff's Pixel 6, 7 and 8 cell

4       phones and his cell phone service.

5

6    67. The Plaintiff also lost two dozen laptops+ that Mr. Block stole; Mr. Block also shut the Plaintiff

7       out of more than 10 laptops using the techniques described.

8    68. Because the Block Criminal Gang shut him out of many of his laptops as well, the Plaintiff has

9       been unable to recover his gmail accounts using the online recovery options.

10

11   **Plaintiff's attempts with Google, LLC employees to get back his accounts**

12   69. At this point, the Plaintiff has lost over forty (40) hijacked gmail accounts to Mr. Block and the

13       Bob Block Criminal Gang.

14

15   70. In each of those cases, the Plaintiff signed up for the Gmail account using his name and birthday

16       and is the rightful owner of those gmail accounts.

17   71. When the online Google recovery process has not worked to get the Plaintiff's account back, the

18       Plaintiff has contacted people in Google customer service and customer support in various ways

19       to get help getting his gmail accounts back.

20

21   72. The Plaintiff has called Google, but this has not been a good way to get assistance on his issues.

22   73. The Plaintiff has read everything relevant that Google has online about account recovery.

23   74. In the cases where the Block Criminal Gang stole his laptop, or shut him out of his laptop, and

24       changed his gmail password, the Plaintiff is unable to recover his gmail accounts using online

25       recovery.

26

10
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

75. The Plaintiff has contacted individual people at Google to get their help in getting his accounts back.

76. The Plaintiff has written letters, too, to Google employees, such as the one in Exhibit D.

77. The Plaintiff has no issues with his gmail accounts themselves, but he has hoped – still hopes – that people at Google will help him get his accounts back.

78. The Plaintiff knows that Google wants the best for its customers, and has pledged to "Do No Evil." Google is clearly anti-crime, pro-business, and pro-customer.

79. So far, despite his many attempts to get back his gmail accounts with help from Google employees, the Plaintiff still does not have the gmail accounts back, that he is the rightful owner of.

80. Upon information and belief, the Plaintiff's gmails are still being used for criminal purposes by Mr. Block and the Block Criminal Gang, including criminal fraud and other crimes in which the stolen identity of the Plaintiff is a predicate act.

**Possible Injunctive Relief**

81. The Plaintiff considered asking for injunctive relief and a restraining order requiring Defendant Google to close and deactivate the hijacked and stolen accounts, as in another case in this district *Rocky Mountain Bank v. Google Inc.,* 5:09-cv-04385 JW.

82. However, the Plaintiff feels it is best that he obtain Declaratory Relief (below) and another form of Injunctive Relief (below) so that he can get his accounts back.

83. That will prevent further criminal activity with the gmail accounts that he rightfully owns and will provide the Plaintiff with information as to what has happened with his emails.

11

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

84. The Plaintiff will then be able to report the further criminal activities by Mr. Block and the Block Criminal Gang to law enforcement (requests for investigation, with legally-admissible evidence attached).

85. The Plaintiff does not need 40+ gmail accounts, so after getting his gmail accounts back, and finding out what Mr. Block and the Block Criminal Gang have been doing with those accounts, the Plaintiff will be able to deactivate most of his gmail accounts at that point. (Google has a process for that).

**Impact on the Plaintiff**

86. With the loss of his gmail accounts and Defendant Google not helping him get them back, the Plaintiff has lost hundreds of thousands of dollars or more.

87. For example, with the account CarlWescott2022@gmail.com, the Plaintiff was in contact with potential investors for Epix Minerals' deal, that his company Capital Ideas has a contract to raise money.

88. Five investors expressed interest through email.

89. Two of those investors could easily have taken the entire round the Plaintiff is raising, with one showing interest in doing so.

90. But now, due to the loss of access to his emails and other files, the Plaintiff has lost the ability (at least temporarily) to continue his correspondence with those prospective investors and to move them to a close with his client Epix Minerals.

91. That fact alone is one of the most significant reasons the Plaintiff may have lost somewhere between $350,000 Canadian dollars and $1 million Canadian dollars on that deal, by not getting

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE
also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

to a closing with one of those investors where he or his company is paid a consulting success fee.

92. The Plaintiff fully acknowledges that he still can close the planned investment deals with investors for his client, and thus, in the best case, the impact of not getting his gmail accounts back might be a delay rather than a total loss.

93. In the worse case, though, if his client Epix Minerals closes their investment round with other investors, then the Plaintiff will have permanently been deprived of the opportunity to close that business and earn those fees.

94. The Plaintiff has many more such deals with similar impact from the Block Criminal Gang's theft of his gmail accounts and Google employees' not helping the Plaintiff get his gmail accounts back. For example, Vivos, the Balam Escape, UGI and RiverRecycle.


**Jury trial**

95. The Plaintiff, unfortunately, has been left with no choice but to file this legal complaint in hopes that justice can be served.

96. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

97. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

**Planned Declaratory Relief**

98. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., after review of the case, the Plaintiff will respectfully request that the Court declare that he is the rightful owner of the Gmail accounts listed in Exhibit A.

99. The Plaintiff plans to put this in Motion form after Defendant Google makes an appearance in this case, after checking first to see if Google will stipulate to the Plaintiff being the rightful owner of the accounts, upon review of evidence provided by the Plaintiff.

**Planned Injunctive Relief**

100.      After the Court is satisfied that the Plaintiff is the rightful owner of the gmail accounts in question, the Plaintiff will further respectfully request that the Court order Google, Inc. to return
the Plaintiff's email accounts to the Plaintiff, the rightful owner.

101.      The Plaintiff will put this in the form of a Motion after Defendant Google makes an appearance in this case.

**Count I – Negligence**

102.      The Plaintiff realleges paragraphs 1-101 as if fully set out herein.

103.      Defendant Google had legal duties to the Plaintiff, as a customer of Google, LLC.

104.      In his requests to get his gmail account back, the Plaintiff made Defendant Google and Google employees aware of the harm and losses he was suffering in not getting his gmail

14

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

1   accounts back (e.g. Exhibit D).

2   105.        Google employees shirked their duties and were negligent in not helping the

3   Plaintiff get his gmail accounts back.

4   106.        Google employees' negligence in not helping the Plaintiff get his account back was

5   the proximate cause of the Plaintiff's damages, causing him financial harm in multiple

6   categories, among them the loss of revenue he otherwise would have earned.

7

8   107.        Google is responsible for the negligent acts of its employees under *respondeat*

9   *superior* and vicarious liability.

10  108.        The Plaintiff was damaged by Google's negligence, in losing revenues he otherwise

11  would have earned.

12  109.        All allegations including the precise amount of damages shall be fully proven at

13  trial.

14

15

16  [Prayer for Relief follows on the next page]

17

18

19

20

21

22

23

24

25

26

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE
also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

WHEREFORE, PLAINTIFF PRAYS:

(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendant's negligence;

(b) For reasonable compensation for the value of his time in representing himself while he cannot afford an attorney (*quantum meruit*);

(c) For reasonable future attorney's and paralegal fees and costs including administrative, filing, service, Court reporter, jury fees, travel costs and for all other reasonable costs of this action and;

(d) For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED

Carl A. Wescott, *pro se*
January 22nd, 2024

---

**VERIFICATION**

I, Carl A. Wescott, under penalties provided by California and Arizona law as well as the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

16
**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
**also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**

1

2        **EXHIBIT A – list of key CarlWescott and WescottCarl gmail accounts**

3

4        CarlWescott0@gmail.com
         CarlWescott1@gmail.com
5        CarlWescott2@gmail.com
6        CarlWescott3@gmail.com
         CarlWescott4@gmail.com
7        CarlWescott5@gmail.com
8        CarlWescott6@gmail.com
         CarlWescott7@gmail.com
9        CarlWescott8@gmail.com
         Carl8Wescott@gmail.com
10       CarlWescott9@gmail.com
11       CarlWescott23@gmail.com
         CarlWescott42@gmail.com
12       CarlWescott47@gmail.com
         CarlWescott74@gmail.com
13       CarlAWescott2019@gmail.com
14       CarlWescott2019@gmail.com
         CarlWescott2020@gmail.com
15       CarlWescott2021@gmail.com
16       CarlWescott2022@gmail.com
         CarlWescott2023@gmail.com
17       CarlWescott2024@gmail.com
         CarlWSOJ@gmail.com
18       Carl.Wescott.DXB@gmail.com
19
         WescottCarl47@gmail.com
20       WescottCarl74@gmail.com
21       WescottCarl2002@gmail.com

22       There are more than 14+ other Carl Wescott gmail accounts lost to the criminals (the Bob
23       Block Criminal Gang), but these are the ones the Plaintiff remembers.

24

25

26
                                        17
         **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR NEGLIGENCE**
           **also seeking DECLARATORY RELIEF and INJUNCTIVE RELIEF**



## AGREEMENT FOR THE RAISING OF EQUITY CAPITAL

THIS *AGREEMENT FOR THE RAISING OF EQUITY CAPITAL* (this "Agreement") is made on the day that both Parties have signed.

BETWEEN

**2348662 Alberta Inc.** hereinafter referred to as **"EPIX"**, a Canadian company headquartered in Calgary, which expression shall where the context so admits includes its agents, successors in title and assigns, of the first part;

AND

**CAPITAL IDEAS WLL,** hereinafter referred to as **"CAPITAL IDEAS,** a recently-formed Bahrain limited liability company, which expression shall where the context so admits includes its agents, successors in title and assigns, of the second part.

Each is a **"Party"** to this Agreement and they are referred to collectively as the **"Parties"**.

**WHEREAS:**

a) **EPIX** is a Canadian-operated precious and base metals exploration company with operations centered on the discovery and development of significant gold prospects in Colombia. **EPIX** unlocks project potential through strategic consolidation alliances by acquiring or partnering with respected companies and promising properties to create advancement.

b) **CAPITAL IDEAS** is a consultancy whose objective is to gold miners with ideas and implementations that will improve ROI and profits, create and monetize new products and services, and increase sales.

   More germane to this opportunity, **CAPITAL IDEAS** also facilitates the process of raising capital by qualifying and structuring deals, packaging them up to meet underwriting requirements, sourcing investors, and then making the introductions that result in needed capital/financing for the gold miner on its projects.

c) **CAPITAL IDEAS** wishes to assist **EPIX** in financing its current offering @ 35 cents a share, with $7 million available and allocated for investors, prior to its future offering and public float on the TSX. EPIX wishes to retain Mr. Wescott and CAPITAL IDEAS to raise capital, on a full performance basis, where no compensation will be paid unless Mr. Wescott's introductions result in closed investment.

## NOW THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

1. **Assumptions and Factual Representations**

   **EPIX** warrants and represents that its investor materials have true facts and representations.

1

Mr. Wescott of **CAPITAL IDEAS** warrants and represents that he has the knowledge and experience to collaborate on an executive summary to "wrap" other investor materials with appropriate marketing messages, and then to target appropriate investors, make introductions, and walk them through the investment process with Mr. Dau of **EPIX**.

2. **Further Representations and Warranties**

Each Party represents and warrants that it has full rights, powers and authority to enter into this Agreement without the violation of any contractual, legal or other obligation to any corporate entity or person. The terms and conditions shall constitute a binding and enforceable agreement between the Parties and their agents/successors-in-title.

3. **Responsibility of EPIX**

**EPIX** will provide all necessary documents and information to Mr. Wescott and his investors.

4. **Responsibility of CAPITAL IDEAS**

**CAPITAL IDEAS** will collaborate on an executive summary for marketing purposes, then will target appropriate investors, contact them, and introduce the ones who are interested to Mr. Dau. From that point on Mr. Dau and Mr. Wescott will collaborate on getting as many of those investors as possible fully informed, through any due diligence, and to the close(s).

5. **Non-Circumvent**

**CAPITAL IDEAS** and **EPIX** agree not to circumvent each other and their respective relationships. Thus, for all investors introduced to **EPIX** (directly or indirectly), **CAPITAL IDEAS** will be compensated for all relevant successful raise closes soon or in the future, including if the same investor or lender invests multiple times.

6. **Decisions**

**CAPITAL IDEAS** will make recommendations, but all decisions will be made by **EPIX**.

7. **Success Fees**

For each closed investor and investment introduced by Mr. Wescott not previously known to **EPIX**, **EPIX** will pay **CAPITAL IDEAS** a 10% consulting fee (success fee percentage of closed investment), comprised of 5% cash and 5% equity. In other words, beyond the cash component, Mr. Wescott or his assigned entity will be assigned shares in EPIX equal in value to 5% of that particular investment.

**EPIX** will pay no fees up front, no consulting, and no expenses to **CAPITAL IDEAS** (unless any future planned

2

EPIX will only pay **CAPITAL IDEAS** when money for the project has arrived from investors identified and introduced by **CAPITAL IDEAS**. **EPIX** will pay **CAPITAL IDEAS** within a few business days of monies arriving in **EPIX's** bank account.

8. **No Liability**

   **EPIX** shall have no liability to **CAPITAL IDEAS** except for the payment of earned success fees based on ready, willing and able investors sourced and introduced by **CAPITAL IDEAS**.

9. **Amendment**

   This Agreement shall be capable of being amended only by a written instrument executed by the Parties.

10. **Assignment**

    Neither Party shall assign, sell or transfer, in any manner whatsoever, this Agreement or all or any of its rights hereunder, or agree to any such assignment, sale or transfer, without the prior written consent of the other Parties.

11. **Entire Agreement**

    This Agreement constitutes the entire agreement between the Parties in relation to the subject matter of this Agreement and supersedes all other agreements and undertakings (oral or written) hitherto exchanged by the Parties prior to the execution of this Agreement.

12. **Notices**

    Any notice given under this Agreement may be in text or WhatsApp or email and shall be considered delivered when sent. For important notices, it is suggested to confirm delivery by recipient by email, phone, and/or text. The relevant numbers for all notices shall be as follows:

    > **EPIX:**
    > Telephone/WhatsApp: +1 403 455 6677
    >
    > **CAPITAL IDEAS:**
    > Telephone/WhatsApp: +1 276 773 7377

16. **Governing Law and Dispute Resolution**

    It is hereby agreed that this Agreement shall be governed and determined in accordance with the laws of Canada.

    If there is a dispute, the Parties shall talk and then meet in person if necessary. If the dispute cannot be solved, the wronged party may choose Canada and the United States for any

arbitration, mediation, or other relevant legal process, and the other party will cooperate with the chosen jurisdiction/venue.

IN WITNESS WHEREOF, the Parties hereby memorialize this Agreement.

**FOR: EPIX**

**FOR: CAPITAL IDEAS**

## EXHIBIT C: ASSIGNMENT OF CAPITAL IDEAS CLAIMS

WHEREAS, Capital Ideas, WLL, ("Capital Ideas"), is the owner of legal claims ("the claims") related to Google's negligence in helping get stolen/hijacked gmail accounts back to Carl Wescott, the rightful owner of the gmail accounts.

COMES NOW, Capital Ideas, that hereby sets forth and agrees as follows:

1. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Capital Ideas hereby assigns all legal right, title, and interest it may have in the claims, to Carl A. Wescott ("Wescott").

2. Capital Ideas waives all right, title, claim and interest in these legal claims, whatever it or they may be, to Wescott free and clear of any claims of itself.

3. Wescott shall have all legal right and claim to the assigned legal claims. Wescott shall be afforded all legal rights and responsibilities pursuant to the legal claims as if he was in contract with Epix Minerals and other money-raising clients.

4. Capital Ideas makes no warranties or representations regarding the legal claims, and Wescott enters this Assignment after further review of the timeline and sequence of events.

5. Each party has had the opportunity to seek the guidance of an attorney of their own choosing in entering this agreement.

6. In witness whereof, the Assignor Capital Ideas and the Assignee Carl Wescott have both executed this assignment on the January 2024 date set forth below. The assignment shall be effectuated when both parties have signed.


_____
Assignor Capital Ideas
January 22nd, 2024


_____
Assignee Carl Wescott
January 22nd, 2024

1

December 19th, 2023

EX4/8/T D

Mr. Philipp Schindler
SVP and Chief Business Officer
Google
The GooglePlex
1600 Ampitheater Parkway
Mountain View, CA 94043

Dear Mr. Schindler:

I'm sure you are super-busy, so straight to the point.

I have gmail accounts that I lost due to the activities of criminals (the Bob Block Criminal Gang) who SIM-hacked me to take over my gmail accounts and some laptops via account recovery.

I was in the middle of raising money for some clients when this occurred, and have emails from several investors that had expressed interest in a client securities offering of $7 million Canadian (among other raises).

Because the criminals took over my laptop as well and changed my gmail settings, I cannot recover my gmail accounts, including CarlWescott2022@gmail.com.

I'm enclosing my affidavit (attached) that I created that gmail account and that I am the owner of the gmail account. I can prove in many ways that I am the Carl Wescott that created that gmail and own that gmail account (among other CarlWescott gmail accounts).

Would you kindly have someone in your consumer support organization help me get my account back?

I'm ready to provide any and all further information, can do a quick video call with my passport, can provide a past password, and other reasonable verifications. Thank you!

--Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+ 1 276 773 7377

CARL WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE, AZ 85258
+1 276 773 7377
i

## DECLARATION AND SWORN AFFIDAVIT OF CARL A. WESCOTT

I, Carl A. Wescott, hereby swear under penalty of perjury of the laws of Arizona and the laws of California, that the following facts are true, to the best of my memory, recollection, and belief:

1. I am 56 years old, and a resident of Scottsdale, Arizona.

2. I am competent to testify.

3. Were I to be called to testify in this matter, my testimony would be as follows, and until that point, my written testimony is as such:

4. All of the statements in my letter to Mr. Schindler are true and correct.

5. I created the carlwescott2022@gmail.com account and am the owner of it.

6. One of the investors that was interested in the round I am raising was interested in the possibility of taking down the entire $7 million round or possibly oversubscribing it, if we could structure the equity a certain way (adding a rev-share for downside protection).

7. The client company was willing to do that.

8. Were that to occur, the success fees would be $700,000 Canadian, half cash and half equity.

9. I really need my gmail account(s) back; otherwise I will be financially harmed.

FURTHER AFFIANT SAYETH NAUGHT

_____
Carl A. Wescott

## DECLARATION AND SWORN AFFIDAVIT REGARDING GMAIL ACCTS